```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SUBARU OF AMERICA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>DDB WORLDWIDE COMMUNICATIONS GROUP, INC.,<br><br>        Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-6218 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

Patrick J. Boyle, Esq.
Richard Kurnit, Esq.
Marisa Sarig, Esq.
FRANKFURT KURNIT KLEIN SELZ, PC
488 Madison Avenue
9th Floor
New York, NY 10022
        Counsel for Plaintiff.

Daniel Kenneth Wiig, Esq.
Michael B. Roth, Esq.
MINTZ & GOLD LLP
470 Park Avenue South
10th Floor North
New York, NY 10016

Danielle Marie Bonett, Esq.
PECKAR & ABRAMSON, P.C.
70 Grand Avenue
River Edge, NJ 07661

        Counsel for Defendant.

**IRENAS,** Senior District Judge:

        This matter comes before the Court upon Plaintiff's Motion

1

for Reconsideration and Defendant's Cross-Motion for Reconsideration.  For the following reasons, the Court will grant Plaintiff's Motion for Reconsideration and vacate the Order without prejudice.

## I.

Plaintiff Subaru of America, Inc. ("Subaru") and Defendant DDB Worldwide Communications Group, Inc. ("DDB") entered into an agreement  ("the Agreement") on January 1, 2005.  Under the Agreement, DDB agreed to be Subaru's advertising agency of record in the United States and provide marketing and advertising communications for Subaru's automobiles in the United States.  On October 16, 2007, Subaru provided notice of termination of the Agreement, to take effect 180 days from the date of the letter (in accordance with the Agreement as insisted upon by Subaru). As specified in the Affidavit of Peter Hempel, Subaru at first did not intend to continue to pay the monthly Agency Fee during the Termination Period, but in the end, agreed to continue making the payments.  Hempel Affidavit, ¶16.  During the termination period, Subaru assigned all of its new advertising work to its new advertising agency, as was its right in accordance with ¶17 of the Agreement.  During this termination period, Subaru then conducted an audit of staffing and hours for the years 2005, 2006, 2007 and part of 2008.  DDB argued that the termination period should not have been included in the audit.  Hempel Aff.,

¶24. Yet, the audit did include the termination period, during with DDB did little to no work for Subaru (as all of the advertising responsibilities were now assigned to its new ad agency). According to the conducted audit, Subaru underpaid DDB $359,050.00 and overpaid it $4,398,622.00, in large part due to its monthly payments during the six month termination period. Subaru filed a complaint to this effect, seeking a refund on its overpayment.

In its Motion for Partial Summary Judgment, Subaru contended the Agreement expressly provided for a right to reimbursement on any over- or under-payment revealed by an audit. The motion only sought partial summary judgment on the first count of Plaintiff's complaint: breach of contract arising out of DDB's alleged failure to reimburse Subaru for unearned fees which had been paid in accordance with an estimated fixed fee, as explained below. Thus, Subaru brought the motion to determine the legally correct interpretation of the contract, specifically regarding the rights stemming from the express right to audit the other party's books.

The Agreement specified that Subaru agreed to pay DDB an annual estimated total compensation, based on an estimate of staffing hours, overhead and profit, using a labor-based computation method. The Agreement further provides Subaru with the right to annually audit DDB's:

> books and records relating to third party vendor charges, and the actual staffing and hours compared to the applicable

3

>  Annual Fee/Staffing Schedule. . . . **Each party will bear the entire cost of the audits it initiates and will promptly reimburse the other for any properly documented overcharges or undercharges disclosed by audits, as appropriate**. . . This provision relating to records and audits will continue to apply for one year following any termination[1] of this Agreement. – Agreement ¶16 (emphasis added).[2]

This Court denied the Motion for Partial Summary Judgment on the grounds that there was "simply no contextual support for Subaru's contentions."

Plaintiff filed this Motion for Reconsideration contending the Court overlooked not just the word reimburse, but also express terms which provide contextual support for Subaru's contentions.  Plaintiff alleges the Court made a number of inaccurate statements with regards to the agreements between the two parties, specifically: "[t]he Order suggests that (a) the word reimbursement (or derivations thereof) are not in the Agreement; (b) the Agreement does not provide any guidance for the use of the audit results; and (c) the only operative language concerning the computation of the agency fee states that it is to be done by mutual agreement."  Pl. Br., 6.

---

[1] The word "termination" may be ambiguous.  As the Court mentioned during oral argument, termination, as used in ¶16 could mean either the date when the notice of termination is first given or it could mean the last day of the 180 day period of termination.

[2] The language in bold is the language the Court overlooked in its first opinion in this matter. It was an error of fact, but not a determinative one which changes the legal outcome of the case or the denial of Plaintiff's motion for partial summary judgment.

Defendant opposes Plaintiff's motion for reconsideration and also file a cross-motion for reconsideration of a limited portion of this Court's order. DDB contends this Court made a manifest error of law by prematurely entertaining the merits of the motion for partial summary judgment because the parties had not yet begun discovery. DDB conditions its cross motion as actionable only in the event that the Court will vacate any portion of its previous order. Def. Br., 23.

## II.

Parties may file a motion for reconsideration of an order under the District of New Jersey Local Civil Rules. D.N.J. L.Civ.R. 7.1(I). Motions for reconsideration are the "functional equivalent" of motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir.1990). The purpose of a motion for reconsideration is to "correct manifest errors of law or fact." *Max's Seafood Café ex-rel Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999)(internal quotations omitted). Therefore, a court may exercise its discretion to alter or amend its judgment if the movant demonstrates one of the following: (1) an intervening change in the controlling law; (2) availability of new evidence not available when the judgment was granted; or (3) the need to correct a clear error of law or fact or to prevent

manifest injustice.  *Id.*

In the instant case, the only basis for reconsideration is the need to correct a clear error of law or fact or to prevent manifest injustice. "[T]he movants must show that the court overlooked a factual or legal issue that may alter the disposition of the matter, such as when dispositive factual matters or controlling decisions of law were brought to the court's attention, but not considered." *Marshak v. Treadwell*, 2008 WL 413312 at *5, (D.N.J.2008). A motion for reconsideration "does not permit a Court to rethink its previous decision, rather, the rule permits a reconsideration only when 'dispositive factual matters or controlling decisions of law' were presented to the court but were overlooked." *Buffa v. New Jersey State Dept. of Judiciary*, 56 Fed.Appx. 571, 575 (3d Cir.2003).

### III.

The Court acknowledges it made an incorrect finding of fact. The Court specifically stated in its opinion that there was "no contextual support for Subaru's contention that the Agreement provides for an express right to reimbursement upon an audit." However, the word reimburse is used in the Agreement (the language in bold above). Thus, there is contextual support for Plaintiff's contention and Court overlooked what could very well prove to be dispositive language.

6

However, the Court is concerned that, regardless of its error, this issue still does not meet the standard for Summary Judgment. There is still ambiguity with regards to the audit provision and the annual review of the estimated fee provision which contemplates mutual agreement. Agreement, Exhibit B, p. 19.[3] There appears to be some tension between the two provisions, one of which requires annual negotiation, while the other permits an audit look-back without limit on the number of years reviewed. Paragraph 16 requires parties to keep their books and records for only two (2) years which is somewhat inconsistent with an audit going back to the inception of the Agreement. Agreement, ¶ 16, p. 14. The Court also notes that even if there turns out to be some contractually-required level of reimbursement, determining the amount still remains necessary. Furthermore, there has been almost no factual discovery up to this point.

Despite DDB's request to the contrary, Subaru included the termination period in the audit because it knew what the results

---

[3] Exhibit B, A(ii)
"On an annual basis, beginning approximately 90 days prior to the end of each contract year, we shall mutually review the monthly fee in light of actual and anticipated Agency manpower utilization, cost of living changes, and costs. If revised fees are not mutually agreed upon prior to the start of the next contract year, then the current fee schedule shall continue until a revised monthly fee is mutually agreed, at which point the revised fee shall be retroactive to the state of the then current contract year, unless otherwise agreed by the parties."

would be.  Subaru knew that DDB had hired people to staff the Subaru account and that the estimated monthly fee was based upon the labor costs of a number of the agency's staff working full time on the Subaru account.  As soon as Subaru sent its notice of termination and began to give all work to its new ad agency, DDB would no longer have the work to occupy the staff assigned to the account. As a result, of course Subaru's audit would show it had overpaid DDB for the termination period, because it did not supply them with work to do during that period.  DDB contends, it "would never have agreed to allow Subaru to pay the Agency fee [monthly fee], but then later seek to recover it based on DDB's purpose failure to devote sufficient resources to its account. Indeed, here, Subaru rendered DDB incapable of doing so by assigning all of its new advertising work to" its new agency." Hempel Aff., ¶25.  Yet, under ¶¶ 10(b) and 17 in the Agreement, Subaru might have elected to continue DDB at the same level of work during the termination period, making mass layoffs difficult.

   A Motion for Reconsideration is a chance to bring evidence purportedly overlooked, to the Court's attention.  The Court acknowledges it overlooked the presence of the word "reimburse" and concedes that this language may in fact be dispositive. However, discovery is needed to harmonize all the language in the Agreement, to determine the context in which the parties signed

8

the Agreement and their intent upon doing so and finally to determine what reimbursement, if any, may be due and owing.

## IV.

For the reasons stated above, this Court will not disturb the denial of Plaintiff's Motion for Partial Summary Judgment and will deny Plaintiff's motions for reconsideration. Defendant's cross-motion for reconsideration is mooted by this decision.

July 1, 2010                                    s/ Joseph E. Irenas
                                         **JOSEPH E. IRENAS, S.U.S.D.J.**